GEO. W. TILLOTSON, *v.* DANIEL McCRILLIS.

A father may give to his infant son *a part* as well as the whole period of ————
his minority.

The acts of an agent may be given in evidence against the principal and
also what he said, in the performance of the agency, but his subsequent
concessions of what he said or did, are inadmissible.

When a man has received money, as agent for another, but denies the
agency, and claims to have received it on his own account, he is not en-
titled to *demand* before suit.

THIS was an action of assumpsit for money had and re-
ceived.——Plea, General issue.

On the trial of this case in the county court, the plaintiff
gave evidence tending to prove, that in the summer of 1834,
he being then nineteen years of age, his father, Joseph Til-
lotson, told him that he might go to work and have his wages.
He labored for others that summer, and took his pay.  In
September he went to work for one Cutler, for whom he
labored about six weeks, and on Cutler's inquiry of Joseph
Tillotson, he was directed to pay plaintiff the amount of his
wages.  The plaintiff purchased of Cutler a pair of steers,
and paid for them by turning his wages, paying a town or-
der of about five dollars, and agreed to pay three dollars
more, which was afterwards paid for him by his uncle Moses
Sargeant.  The plaintiff then informed Sargeant, how he
had obtained the steers, and told him, that he wished to let
his father have the steers to use, while he, the plaintiff, should
hold them and have their growth, and fearing that the credi-
tors of said Joseph would attach the steers, it was agreed
that the plaintiff should pretend to sell the steers to said
Sargeant, who should claim them, and save them from at-
tachment on Joseph Tillotson's debts, and it was so done,
and witnesses were called of said sale.  All this was under-
stood by said Joseph, and the steers went into his posses-
sion.  In the spring of 1835, the plaintiff went to labor
in Massachusetts.

In August, 1835, a public advertisement was inserted in
the newspaper, that Joseph Tillotson had given the plaintiff
his time.  In the spring of 1835, Orange Fifield and Chris-
topher Richardson, each put into the hands of an officer writs
against Joseph Tillotson, on which the steers were attached.

Moses Sargeant commenced an action of trespess against the officer therefor. That suit was defended by Fifield and Richardson, and judgment passed for the plaintiff before the justice, and the cause was appealed to the county court;—that afterwards, the defendant called on the said Sargeant as the friend of the Tillotson family, and inquired into this affair, and was informed by Sargeant of all the circumstance. Sargeant then informed McCrillis, that he had little or no confidence in sustaining his action, and thought of abandoning it. McCrillis then advised that the suit should not be abandoned;—that he would lend his assistance and endeavor that the property, or its avails, should be kept from the creditors of the said Joseph, the plaintiff then being in Massachusetts;—that afterwards, the defendant informed Sargeant that Joseph Tillotson wished the defendant to arrange and settle the action, and Sargeant consented that McCrillis might make any such settlement of the suit as Joseph Tillotson should consent to. The plaintiff's testimony tended further to show, that Joseph Tillotson agreed with McCrillis that he might settle the action and procure what he could and hold the same for the plaintiff, and that afterwards, McCrillis did settle the suit with said Richardson and Fifield, under an agreement that they should give their several notes for the amount of the judgment recovered before the justice, but that Richardson should have applied in payment of his note, the amount of his debt against said Joseph Tillotson;—that said Fifield gave to the defendant his note for $25,00, payable to Sargeant, and Richardson gave his note for the balance and that afterwards, and before the commencement of this suit, the defendant collected the money of Fifield and claimed to hold it on his debt against said Joseph, but had not collected of Richardson the note against him. On the taking of these notes, the action of Sargeant ended, or was considered settled.

Sargeant was a witness, and testified for the plaintiff, and among other things, testified that he did not agree with McCrillis, that he might settle that suit and apply the avails on what Joseph Tillotson owed the defendant. The defendant offered a witness to prove that Sargeant had told said wit-

ness that he had agreed with defendant, that he might settle said suit and apply the avails on what Joseph Tillotson owed McCrillis. This was objected to by the plaintiff, and rejected by the court, as the said Sargeant had not been asked whether he had so stated. To this decision the defendant excepted.

The defendant introduced evidence, tending to prove that Joseph Tillotson claimed the plaintiff's wages of different persons until August 1835. That Sargeant agreed that the defendant might settle the suit, in any way Joseph Tillotson might consent to, and that Joseph Tillotson did agree and consent, and did direct the defendant to settle the suit, and receive notes of Fifield and Richardson, in the manner that the defendant did, and that whatever he received on the said settlement, or on said notes, should be held by the defendant, and applied on the debts of the defendant against the said Joseph Tillotson.

The defendant requested the court to charge the jury ;— that the plaintiff, even if the facts were as his testimony tended to prove, could not recover. That if any suit could be maintained against the defendant, it must be by Sargeant, or by Joseph Tillotson, and that even if the plaintiff could have any claim on the defendant it could only be after *demand made.*

The court declined so to charge the jury, but did charge them, that if they were convinced that when the defendant settled the suit, he did it under an agreement with Sargeant and Joseph Tillotson, to receive and hold the avails for the plaintiff, and after settling it, insisted on holding the avails on his own debt against said Joseph, the plaintiff was entitled to recover for the money received of Fifield. But if the jury believed, from the testimony, that the defendant settled that suit by an agreement with Joseph Tillotson that he might so settle it, and apply the avails on the defendant's debts against said Joseph, then the defendant was entitled to a verdict. The jury returned a verdict for the plaintiff, and the defendant excepted to the charge of the court.

*W. Upham & L. B. Vilas,* for defendant.
*S. Austin & L. B. Peck,* for plaintiff.

COLLAMER, J.—The steers, out of which this controversy

# 480 CASES IN THE SUPREME COURT

ORANGE,
July,
1839.
‾‾‾‾‾‾‾‾
Tillotson
v.
McCrillis.

arose, were undoubtely the property of the plaintiff. That a father may give to his infant son his time, who thereupon will be entitled to the fruit of his earnings, has been fully decided in this state. There can be no reason why he may not give him a part of that time. In this case, the plaintiff's father gave the plaintiff his time, and he earned these steers. This was not attempted to be disproved. The showing that for earnings of an after date, the plaintiff's father took pay, does not tend to disprove the fact, of the plaintiff's having his own earnings the season he procured the steers. The plaintiff put the steers into the hands of his uncle, Sargeant, thinking that his father's creditors would be less likely to attach them. In all this, there was no *fraud*, and all this was known to the defendant. The jury have found that the defendant received the money for the plaintiff, as his agent. He, then, is not permitted to say that it was not the plaintiff's property, and even if he were, it is clear that it was the plaintiff's property.

A man cannot claim the privileges and rights of a character which he refuses to sustain, and the responsibilities of which he repudiates. When a tenant disclaims that relationship, and, assuming a belligerent attitude to his landlord, claims to hold in his own right, he is not entitled to notice to quit. In this case, the defendant was claiming the money in his own right, insisting that he so received it. He utterly declined being considered the plaintiff's agent, and therefore, had no right to insist on the privileges of an agent. The court, therefore, correctly charged the jury, that if the defendant received the money as the agent of the plaintiff, their verdict must be against the defendant, even without any demand of payment before suit.

It is true, that Sargeant was the plaintiff's agent, with whom he left the steers, and by whose consent the defendant received the money therefor, for the plaintiff. It was competent for the defendant to show what this agent did or said in the execution of his agency. He might have proved by him, or others, that he directed him what to do in relation to the steers, or the suit, or money therefor. But the subsequent concessions of an agent of what he said or did, in the performance of his agency, are never admissible against

the principal, except to discredit the agent when he has testified, and then only under the same restrictions as other witnesses are to be discredited, by showing that they have told a different story from that told on the stand.

They must first be asked in relation to their having so stated.